WALTER RILEY, SBN 95919
LAW OFFICE OF WALTER RILEY
1407 Webster Street, Suite 206
Oakland, CA 94612
Telephone: (510) 451-1422
Facsimile: (510) 451-0406
Email: walterriley@rrrandw.com

DAN SIEGEL, SBN 56400
JANE BRUNNER, SBN 135422
EMILYROSE JOHNS, SBN 294319
ANDREW CHAN KIM, SBN 315331
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com; janebrunner@hotmail.com;
emilyrose@siegelyee.com; chankim@siegelyee.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTI POLICE-TERROR PROJECT, COMMUNITY READY CORPS, SEAN CANADAY, MICHAEL COHEN, ANDREA COSTANZO, LINDSEY FILOWITZ, DANIELLE GAITO, KATIE JOHNSON, JENNIFER LI, IAN McDONNELL, MELISSA MIYARA, LEILA MOTTLEY, MARIA RAMIREZ, AKIL RILEY, MANUEL RILEY, AARON ROGACHEVSKY, CHRISTINA STEWART, TAYAH STEWART, KATHARINE SUGRUE, CELESTE WONG, and QIAOCHU ZHANG; on behalf of themselves and similarly situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> GREGORY J. AHERN, COLBY D. STAYSA, and COUNTY OF ALAMEDA, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES** <br><br> **Civil Rights** <br><br> **DEMAND FOR A JURY TRIAL** |

**INTRODUCTION**

1.      Beginning on May 29, 2020, following the brutal police murder of George Floyd, who was recorded on video reciting the all too familiar and tragic plea, "I can't breathe" while a white police officer kneeled on his neck, Bay Area residents took to the streets of Oakland to protest this injustice and the police murders of other Black and Brown people, including Breonna Taylor, Ahmaud Arbery, and Tony McDade.

2.      Defendant County of Alameda and its Alameda County Sheriff's Office ("ACSO"), replied to these protests in Oakland with unnecessary, violent crowd control tactics against peaceful demonstrators. Over the course of four days, ACSO utilized constitutionally unlawful tactics, including the indiscriminate launching of tear gas and flash bang grenades and shooting a variety of projectiles into crowds of peaceful demonstrators, including many young Black and Brown people.

3.      ACSO knowingly placed these demonstrators in physical danger through its indiscriminate use of excessive force.

4.      ACSO's action also violated the Oakland Police Department's (OPD) policies and procedures for crowd control, although ACSO was required to follow those policies under California state laws and regulations governing mutual aid by law enforcement agencies and by judicial decrees in prior lawsuits.

5.      On June 1, 2020, at around 5 p.m., the Alameda County Sheriff issued a curfew order for the County of Alameda, set to begin at 8 p.m. that evening. The curfew was established while approximately 15,000 students and others including Oakland residents peacefully marched and gathered on the streets of Oakland.  ACSO falsely claimed that demonstrators were inciting violence, throwing Molotov cocktails, assaulting officers, throwing rocks at officers, and destroying property to justify its use of force and to discourage participation by the public.

6.      Plaintiffs bring this action to restrain the County of Alameda and ACSO from engaging in similar unconstitutional violence in the future and for damages.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (claims arising under the U.S. Constitution) and § 1343(a)(3) claims brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the U.S. Constitution), and 42 U.S.C. § 1983.

8.    The state law claims herein are related to claims in the action within original jurisdiction so that they form part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

9.    Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because defendants are located in the Northern District of California and § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the Northern District of California.

**PARTIES**

10.    Plaintiff Anti Police-Terror Project ("APTP") is a Black-led, multi-racial, intergenerational coalition that seeks to build a replicable and sustainable model to eradicate police terror in communities of color. APTP supports families surviving police terror in their fight for justice, documenting police abuses and connecting impacted families and community members with resources, legal referrals, and opportunities for healing. APTP was created following the police killing of Oscar Grant on January 1, 2009, and frequently organizes and leads protests against police misconduct.

11.    Plaintiff Community Ready Corps ("CRC") is an Oakland-based community organization that combats white supremacy and actively builds and supports Black liberation. CRC frequently organizes and leads protests against police misconduct.

12.    Plaintiff Sean Canaday is a resident of Berkeley, California.

13.    Plaintiff Michael Cohen is a resident of Berkeley, California.

14.    Plaintiff Andrea Costanzo is a resident of Oakland, California.

15.    Plaintiff Lindsey Filowitz is a resident of Oakland, California.

16.     Plaintiff Danielle Gaito is a resident of San Rafael, California.

17.     Plaintiff Katie Johnson was at the time of her injuries referred to herein a resident of Oakland, California.

18.     Plaintiff Jennifer Li is a resident of Oakland, California.

19.     Plaintiff Ian McDonnell is a resident of Oakland, California.

20.     Plaintiff Melissa Miyara was at the time of her injuries referred to herein a resident of Oakland, California.

21.     Plaintiff Leila Mottley is a resident of Oakland, California.

22.     Plaintiff Maria Ramirez is a resident of Oakland, California.

23.     Plaintiff Akil Riley was at the time of his injuries referred to herein a resident of Oakland, California.

24.     Plaintiff Manuel Riley is a resident of Oakland, California.

25.     Plaintiff Aaron Rogachevsky is a resident of Oakland, California.

26.     Plaintiff Christina Stewart is a resident of Sacramento, California.

27.     Plaintiff Tayah Stewart is a resident of Sacramento, California.

28.     Katharine Sugrue is a resident of Oakland, California.

29.     Plaintiff Celeste Wong is a resident of Oakland, California.

30.     Plaintiff Qiaochu Zhang is a resident of Oakland, California.

31.     Defendant Gregory J. Ahern is the Sheriff of Alameda County. He is being sued in his individual and official capacities.

32.     Defendant Colby D. Staysa is a Captain with the Alameda County Sheriff's Department and was the Incident Commander for ACSO during the protests in Oakland on May 29 through June 1, 2020. He is being sued in his individual and official capacities.

33.     Defendant County of Alameda is a public entity organized under the Constitution and laws of the State of California and is responsible for the policies and funding of the Alameda County Sheriff's Office (ACSO). The County of Alameda operates ACSO under its authority.

1

**STATEMENT OF FACTS**

2      34.     On Monday, May 25, 2020, a then-Minneapolis police officer brutally murdered

3   George Floyd, a Black man who was unarmed and who was not resisting, while other police

4   officers stood by and watched.

5      35.     Innumerable people held peaceful protests across the world condemning police

6   brutality and systemic racism in the wake of the state sponsored and/or excused murders of

7   George Floyd, Breonna Taylor, Ahmaud Abrey, Tony McDade, and countless others.

8   Throughout Oakland, protesters honored the men and women killed by local law enforcement:

9   Oscar Grant III, Alan Blueford, Yuvette Henderson, Richard Perkins, Jr., Dujuan Armstrong,

10  Kayla Moore, Jody Mack Woodfox, Jessica Williams, Jesus Delgado Duarte, Jehad Eid,

11  Sahleem Tindle, and many others.

12     36.     On May 28, 2020, the City of Oakland activated its mutual aid network for crowd

13  control assistance for the protests.

14     37.     Pursuant to California state law and regulations, ACSO coordinated the mutual

15  aid request, arranging for other law enforcement agencies to assist in crowd control at the

16  Oakland protests under the command of OPD's incident commanders.

17     38.     At about 8 p.m. on May 29, 2020, demonstrators assembled at Broadway Street

18  and 14th Street in Oakland to stage a peaceful protest. The demographic of demonstrators

19  included people of many different backgrounds and ages. Upon information and belief, the

20  youngest person in attendance was ten years old. Many demonstrators were high school

21  students. The demonstrators wore masks and practiced social distancing to comply with

22  COVID-19 rules and safe practices. The protest was peaceful.

23     39.     On May 29, 2020, 80 sworn members of the Sheriff's Office responded to the

24  City of Oakland's request for mutual aid. ACSO officers were located on Broadway Street

25  between 7th and 10th Streets and used CS handball grenades, sting ball grenades, smoke

26  handball grenades, 40mm direct impact munitions, FN 303 projectiles, and other weapons

27  against the demonstrators.

28     40.     Before OPD announced a dispersal order, ACSO deployed tear gas and other

---

munitions at the demonstrators.

41.    Tear gassed witnesses complained of eye and throat irritation and difficulty breathing.

42.    On June 1, 2020, starting at approximately 4 p.m., a group of young people participated in a peaceful march from Oakland Technical High School to Oscar Grant Plaza at Oakland City Hall and then to the OPD Administration Building. An estimated 15,000 demonstrators participated, including many high school students, their parents, grandparents, and other relatives.

43.    At the onset, the organizers announced that the protest would be peaceful and explicitly called for "no destruction."

44.    At Broadway Street and 8th Street, the demonstrators met a line of police outfitted in full riot gear.

45.    At approximately 5 p.m., after the youth-led march had already started, the County of Alameda and the City of Oakland began disseminating the message that a curfew would begin three hours later.

46.    Also on June 1, 2020, the City of Oakland declared a local emergency and issued a curfew, effective at 8 p.m. and extending to June 2, 2020, at 5 a.m.

47.    ACSO officers were located on Broadway Street between 7th and 8th Streets and used CS handball grenades, sting ball grenades, smoke handball grenades, 40mm direct impact munitions, and FN 303 projectiles against peaceful protestors.

48.    Without warning and before the curfew went into effect, ACSO used CS handball grenades, sting ball grenades, smoke handball grenades, 40mm direct impact munitions, and FN 303 projectiles against demonstrators. ACSO officers and other police officers shot many demonstrators  in the back as they were fleeing the violent measures employed by police.

49.    OPD and ACSO used tear gas, and OPD and ACSO kettled demonstrators. This tactic denied demonstrators the ability to stay socially distant from one another and trapped demonstrators in a cloud of tear gas forcing some to remove their Covid protective masks.

50.    On June 3, 2020, at a press conference, OPD Chief Susan Manheimer stated that

OPD briefed, instructed, and otherwise controlled the assisting officers, but refused to hold them accountable to Oakland's and OPD's policies.

## PLAINTIFFS' ALLEGATIONS

51.    Members and/or supporters of plaintiffs APTP and CRC participated in the protests on May 29, 2020, and June 1, 2020.

52.    Members and/or supporters of APTP and CRC were injured by ACSO tactics described above, including the use of tear gas, flash bang grenades, and other projectiles. As a result of the police conduct described above, members and supporters of APTP and CRC were discouraged from participating in protests and from exercising their rights to free speech and assembly.

53.    On May 29, 2020, and June 1, 2020, ACSO Chief Ahern knowingly violated OPD's crowd control polices and knowingly violated plaintiffs' rights under the U.S. Constitution and California Constitution in response to the peaceful protests against police violence.

54.    The injuries caused to members and/or supporters of APTP and CRC and to individually named plaintiffs were a direct result of the failure of defendants Ahern and Staysa to properly train, supervise, discipline and command Alameda County Sheriff's Deputies in proper use of force in crowd control situations.

55.    Defendants Ahern and Staysa knew or reasonably should have known that their failure to train, supervise, and/or discipline their subordinates would result in the use of excessive force and the unlawful suppression of First Amendment protected activity.

56.    On May 29, 2020, ACSO deputies used CS hand ball grenades, sting ball grenades, smoke handball grenades, 40mm direct impact munitions, and FN 303 projectiles against the demonstrators who were on Broadway Street between 7th Street and 8th Street.

57.    On June 1, 2020, ACSO deputies used CS hand ball grenades, sting ball grenades, smoke handball grenades, 40mm direct impact munitions, and FN 303 projectiles against the demonstrators who were on Broadway Street and 8th Street.

58.    Plaintiff Sean Canaday attended the protest on June 1, 2020, where officers shot

him in the ear with a projectile. A tear gas canister also hit him in the heel. There was intense tear gas. He went to the emergency room that night for stitches. He suffered a concussion. On information and belief, the injuries suffered by Mr. Canaday were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

59.    Plaintiff Michael Cohen attended the protest with his daughter on June 1, 2020. Between 7 p.m. and 8 p.m. on Broadway Street and 8th Street, a flash bang grenade detonated very close to him, resulting in a headache, and ringing in his ears for 24 hours. Projectiles hit his right thigh and backside, which was bruised for one month. He experienced eye irritation, cough, choking and blindness for a few minutes due to the tear gas. On information and belief, the injuries suffered by Mr. Cohen were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

60.    Plaintiff Andrea Costanzo attended the demonstration on May 29, 2020, on Broadway Street between 7th and 8th Streets. After 8:30 p.m., Alameda County Sheriff's Deputies shot flash bang grenades into the crowd directly at demonstrators. One flash bang exploded on Ms. Costanzo's leg. It burned through her jeans, causing lacerations and bruising. She has permanent mild disfigurement as a result. She ran towards 8th Street. Deputies shot tear gas into the crowd, and Ms. Costanzo inhaled tear gas while she attempted to disperse. As a result of the tear gas exposure, she choked, had difficulty breathing, and her eyes burned and teared-up. On information and belief, the injuries suffered by Ms. Costanzo were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

61.    Plaintiff Lindsey Filowitz was walking outside on June 1, 2020, to get some relief from quarantine. She saw a peaceful protest and decided to join it. While she was on Broadway between 7th and 8th Streets she suddenly heard loud sounds and then saw tear gas canisters flying into the crowd. She ran but because she had inhaled the gas, she could not breathe and had to stop. She became very sick with chest pains, coughing, and diarrhea, and was ill for weeks and still has anxiety and sometimes trouble breathing. She attempted to attend another

protest on June 3, 2020, but was too gripped by anxiety to stay. On information and belief, the injuries suffered by Ms. Filowitz were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

62.     Plaintiff Danielle Gaito attended the peaceful youth protest on June 1, 2020. At Broadway Street and 8th Street she saw that police were not wearing masks and was concerned about COVID-19. The police started throwing flash bang grenades and then tear gas. At about 7:40 p.m., after officers used force against the crowd, the police announced that the gathering was an unlawful assembly and declared that there was a curfew. Officers threw a flash bang grenade that hit her arm. On information and belief, the injuries suffered by Ms. Gaito were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

63.     On May 29, 2020, plaintiff Katie Johnson was at the protest on Broadway Street between 8th and 12th Streets, where she saw officers throwing numerous tear gas canisters and shooting bean bag projectiles directly at people. She was hit by bean bags in the ankle, thigh, and chest. She was hit in the mouth by a tear gas canister and hit by shrapnel on her elbow. On information and belief, the injuries suffered by Ms. Johnson were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

64.     Plaintiff Jennifer Li attended the June 1, 2020, protest on Broadway between 7th and 10th Streets. Between 7 and 8 p.m., she sustained injuries including swelling, bruising, soreness, and blisters to her person when officers threw a flash bang grenade and stinger ball directly into her back as she was walking away from the protest. The flash bang grenade exploded on her back, causing her to stumble forward. She also experienced ringing in her ear and suffered a perforation in her left ear drum. On information and belief, the injuries suffered by Ms. Li were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

65.     Plaintiff Ian McDonnell was tear gassed while participating in peaceful protests in Oakland on June 1, 2020. ACSO and/or other law enforcement agencies tear gassed and

shot projectiles at Mr. McDonnell and other peaceful demonstrators around 9th Street and Broadway Street. On information and belief, the injuries suffered by Mr. McDonnell were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

64.     On May 29, 2020, plaintiff Melissa Miyara attended the demonstration that began at Oscar Grant Plaza and marched to the Police Administration Building. Ms. Miyara was peacefully demonstrating on Broadway Street between 7th and 8th Streets when she was tear gassed by Alameda County Sheriff's Deputies, who were indiscriminately launching tear gas and projectiles up Broadway. She ran to escape the gas plume. She had trouble breathing, irritation in her lungs and eyes, and had to go home following the incident when she had intended to demonstrate later into the evening. She attended the youth-led march on June 1, 2020, but she left when she saw police as her experience on May 29, 2020, with law enforcement caused her to fear that they would deploy tear gas at peaceful demonstrators. Since being tear gassed on May 29, 2020, Ms. Miyara's asthma has worsened, requiring more frequent use of her inhaler. On information and belief, the injuries suffered by Ms. Miyara were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

65.     On June 1, 2020, plaintiff Leila Mottley was 17 years old when she attended a demonstration in Oakland. At around 7:40 p.m. near 8th and Broadway Streets, Alameda County Sheriff's Deputies tear gassed her without giving warning or an opportunity to disperse. Ms. Mottley had to run through the tear gas to escape because the police blocked all other exits. Ms. Mottley was terrified, in pain, coughing and aching to breathe but when she drew in air it was hot and chemical. Her lungs hurt, and she could not lie down without coughing that night. Her skin was irritated and peeling for about a week. She did not attend protests for the next few days because she was traumatized and scared. Ms. Mottley continues to have a fear of tear gas which makes her hesitate to protest. On information and belief, the injuries suffered by Ms. Mottley were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

66.     On May 29, 2020, Maria Ramirez attended the protest and was teargassed and kettled on and near Broadway Street by defendants. She saw police shoot teargas and flashbang grenades into the crowd. She ran with a group of people trying to get away. The police corralled the group into a parking lot where they shot numerous canisters and tear gas into the group, causing a stampede. On June 1, 2020, plaintiff Maria Ramirez was first tear gassed at around 7:30 p.m. She saw a wall of gas. The gas burned her skin and made her face mask stick to her skin. She is a high school teacher and remained at the demonstration to ensure that the high school students who were present were cared for and could make it home safely. On information and belief, the injuries suffered by Ms. Ramirez were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

66.     On May 29, 2020, Akil Riley attended the protest with his father and marched from Oscar Grant Plaza to the corner of 8th Street and Broadway. Without warning, Mr. Riley was subjected to tear gas by law enforcement officers including Alameda County Sheriff's Deputies and had to flee to escape the gas. The tear gas choked him and caused him difficulty breathing. He has a medical history of asthma. His eyes burned and he could not see as he tried to navigate himself and his father out of the cloud of gas. Mr. Riley planned a youth-led march on June 1, 2020, but after his experience on May 29, 2020, he advanced the time of the march to early afternoon so that the march and rally would be concluded before dark, when he feared police were more likely to tear gas peaceful demonstrators based on his observations and experiences on May 29. He also decided to stop the march at Oscar Grant Plaza rather than going to the Police Administration Building, as originally planned. Mr. Riley felt that his ability to demonstrate during after-work hours, when more people would likely be available to join, was stymied by the brutal displays of force he observed on May 29, 2020. His goal on June 1, 2020, was to keep people, especially the youth he organized, safe. On information and belief, the injuries suffered by Mr. Riley were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

67.    Plaintiff Manuel Riley attended a demonstration with his son on May 29, 2020. He marched with demonstrators for a short distance until they arrived at the corner of Broadway and 7th Street. While there, Alameda County Sheriff's Deputies shot tear gas and projectiles into the crowd. One object thrown by the Sheriffs exploded right next to his son's leg. Having attended demonstrations before where police had shot demonstrators in the head and caused life-threatening injuries, Mr. Riley became very frightened for his and his son's safety. Mr. Riley began to feel the effects of the teargas that Sheriff's shot into the crowd. He was unable to breathe, felt intense, blinding burning in his eyes, and experienced panic. He started running to escape the plume of tear gas but he was blinded by the burning in his eyes. He was separated from his son and could hear people scattering as what sounded like bombs went off around him. His fear and anxiety increased as he attempted to escape. When he was finally able to escape the tear gas and fight through the burning in his eyes to look around, all he could see down one street or another were plumes of smoke. After being tear gassed, his eyes burned for hours. Mr. Riley had respiratory issues prior to May 29, 2020, and being tear gassed exacerbated his respiratory issues. On information and belief, the injuries suffered by Mr. Riley were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

68.    Plaintiff Aaron Rogachevsky joined the June 1, 2020, protest at Broadway Street between 8th and 14th Streets around 7 to 8 p.m. He was in the crowd when the police tear gassed the crowd, and a teargas canister was launched toward him by an officer. He had difficulty breathing for at least a day, a cough and runny nose, and his face felt like he had a sunburn for a week. On information and belief, the injuries suffered by Mr. Rogachevsky were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

69.    Plaintiff Christina Stewart is a nurse who lives in Sacramento and works in Oakland. On June 1, 2020, she was staying at the Marriott on 11th Street and Broadway Street. She decided to attend the protest with her teenage daughter. They joined the protest at about 7:14 p.m., when the march passed by her hotel, headed to 8th Street and Broadway Street. At

around 7:42 p.m., she heard a "pop, pop, pop" and teargas canisters landed a few feet away from her. She and her daughter tried to leave. The teargas made them disoriented and sick. They went home as soon as they could. Ms. Stewart is suffering emotionally and was shaken by the tear gassing at a peaceful protest. She is wary of attending another protest. On information and belief, the injuries suffered by Ms. Stewart were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

70.     Plaintiff Tayah Stewart, Ms. Stewart's daughter, was at the peaceful protest with her mother. She was tear gassed and injured for no reason with no warning. After that, she stopped attending protests in any city. On information and belief, the injuries suffered by Ms. Stewart were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

71.     On June 1, 2020, plaintiff Katharine Sugrue participated in the youth-led march from Oakland Tech to Oscar Grant Plaza that began at about 4:30 p.m. She followed youth marchers who headed towards the Police Administration Building. At around 8th and Broadway Streets, around 7:40 p.m., Ms. Sugrue was standing with other demonstrators when she witnessed police pull out tear gas canisters, point to people in the crowd, and lob the devices into the middle of the crowd. She inhaled the tear, felt her eyes burn, felt as if she could not breathe, and experienced fear, anxiety and panic. Ms. Sugrue experienced painful respiratory effects from tear gas and eye irritation for a few hours after being tear gassed on May 29, 2020 and June 1, 2020. Her acute symptoms dissipated after a few days, but she has developed asthma after being tear gassed. On information and belief, the injuries suffered by Ms. Sugrue were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

72.     On June 1, 2020, plaintiff Celeste Wong marched down Broadway towards the OPD Administration building. She and the other protestors stopped and kneeled down at 8th Street and Broadway Street. At around 7:30 to 8 p.m., officers launched flash bang grenades and tear gas into the crowd. They released at least ten canisters. The weapons irritated her

eyes, lungs, and made it so hard to breathe she had to remove her mask. On information and belief, the injuries suffered by Ms. Wong were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

73.     On June 1, 2020, plaintiff Qiaochu Zhang joined the youth protest at 5:30 p.m. At or around 7:30 p.m. he observed officers launch projectiles and tear gas at protestors at 8th and Broadway Streets. The police announcements were inaudible. He tried to run to his home two blocks away at 9th and Franklin Streets, but all of Broadway was covered in teargas. He kneeled on the street due to distress. The police then kettled him and others. Mr. Zhang did not hear an unlawful assembly announcement and had not intended to remain in the area after being tear gassed, but he was trapped by the gas and the surrounding officers. Officers told him that he would go straight to Santa Rita jail if he protested again. On information and belief, the injuries suffered by Mr. Zhang were caused, at least in part, by deputies of the Alameda County Sheriff's Department acting under the authority of Sheriff Ahern and Captain Staysa.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the grounds  that there is a well-defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

75.     Plaintiffs seek to represent the following class: All demonstrators who participated peacefully in the protests in Oakland beginning on May 29, 2020, and continuing through June 1, 2020, and who suffered injuries as a result of the actions of ACSO in firing tear gas and other munitions at the protestors.

76.     Plaintiffs Andrea Costanzo, Lindsey Filowitz, Danielle Gaito, Katie Johnson, Ian McDonnell, Melissa Miyara, Leila Mottley, Maria Ramirez, Akil Riley, Manuel Riley, Aaron Rogachevsky, Christina Stewart, Tayah Stewart, Katharine Sugrue, Celeste Wong, and Qiaochu Zhang seek to represent the following subclass: all demonstrators who inhaled tear gas at the

protests in Oakland on May 29, and/or June 1, 2020. This subclass will be referred to as the "tear gassed demonstrators."

77.    Plaintiffs Sean Canaday, Michael Cohen, Andrea Costanzo, Katie Johnson, and Jennifer Li seek to represent the following subclass: all demonstrators who sustained physical injuries from flash bang grenades and/or other projectiles thrown or launched at them at the protests in Oakland on May 29 and/or June 1, 2020. This subclass will be referred to as the "projectile injured demonstrators."

78.    Plaintiffs and the putative class and subclasses were subjected to the constitutional and statutory violations described in this complaint. Upon information and belief, the legal and factual issues are common to the class and affect all class members.

79.    Plaintiffs reserve the right to amend or modify the class and subclass descriptions with greater specificity or further division into subclasses, as well as to limit the class or subclasses to particular issues, as warranted.

## Numerosity

80.    The potential members of the class and of the subclasses as defined are so numerous that joinder of all of them is impracticable. While the precise number of class members has not been determined at this time, plaintiffs are informed and believe that the class is comprised of more than 1000 individuals. The number of members of each subclass is likely to exceed 100 demonstrators.

## Commonality and Predominance

81.    There are questions of law and fact that are common to the class and subclasses and predominate over individualized questions. These common questions of law and fact include, without limitation:

1.    Does the use of less-lethal weapons deployed by ACSO infringe upon demonstrators' constitutional rights to be free of excessive force, to peaceably assemble, to have freedom of expression, and to be free from viewpoint discrimination under the First Amendment?

2.    Has ACSO manifested a failure to adequately train and supervise its officers to

properly utilize tear gas, flash bang grenades, rubber bullets and other non-lethal weapons?

3. Are there provisions omitted from ACSO crowd control policy and practices that are necessary to protect demonstrators' constitutional rights?

4. Did ACSO ignore, and/or not follow OPD crowd control policies that were necessary to protect demonstrators' constitutional rights?

5. Has ACSO exhibited deliberate indifference to the unconstitutional conduct complained of herein?

**Typicality**

82.     Named plaintiffs' claims are typical of the claims of putative class members. Plaintiffs and all members of the putative class sustained injuries and damages arising out of and caused by defendant's course of conduct, which, as alleged herein, violates United States and California constitutional provisions and law.

**Adequacy of Representation**

83.     Plaintiffs adequately represent and protect the interests of the class and subclass members. Plaintiffs have no interests that are adverse to the class. Plaintiffs are similarly situated to other class and subclass members. Counsel who represents plaintiffs are competent and experienced in litigating civil rights class actions, police misconduct cases, and class actions generally.

**Superiority of Class Action**

84.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each member of the class has been damaged and is entitled to recovery by reason of the unlawful policies and practices described herein. Class members are unlikely to otherwise obtain effective representation to ensure full enforcement of their rights absent class certification.

85.     Class action treatment will allow those similarly situated persons to litigate their

claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

86.    Further, plaintiffs seek declaratory and injunctive relief, which are a remedies well-suited for class action litigation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

87.    On or about August 27, 2020, plaintiffs presented a claim pursuant to California Government Code §§ 910, *et seq.* to the County of Alameda.

88.    The County of Alameda did not deny plaintiffs' claim.

### FIRST CLAIM FOR RELIEF
### First Amendment Violation
(By all plaintiffs against defendants County of Alameda, Ahearn, and Staysa)
42 U.S.C. § 1983

89.    Plaintiffs and plaintiff class incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

90.    By virtue of the foregoing, defendants County of Alameda, Ahearn, and Staysa violated plaintiffs' rights to freedom of speech, assembly, and association under the First Amendment to the United States Constitution, when acting under color of law, they declared the peaceful protests unlawful assemblies and kettled, tear gassed, shot flash bang grenades and other projectiles at plaintiffs. At the June 1 protest, a curfew order that was not narrowly tailored, and without sufficient notice, was issued to further suppress the plaintiffs' protected First Amendment activities including the rights to free speech and assembly.

### SECOND CLAIM FOR RELIEF
### Fourth Amendment Excessive Force and Unlawful Seizure
(By all plaintiffs against defendants County of Alameda, Ahearn, and Staysa)
42 U.S.C. § 1983

91.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

92.    By virtue of the foregoing, defendants County of Alameda, Ahearn, and Staysa violated plaintiffs' rights to be free from excessive force and unlawful seizure when acting under color of law, they kettled, tear gassed, and shot flash bang grenades and other projectiles

1    at plaintiffs.

### THIRD CLAIM FOR RELIEF
#### *Monell* and Supervisory Liability
(By all plaintiffs against defendants Ahearn and Staysa)
42 U.S.C. § 1983

93.     Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

94.     Defendants County of Alameda, Ahearn, and Staysa systematically failed to adequately select, train, and supervise Sheriff's Deputies under their control to prevent these officers from interfering with people's First Amendment rights to freedom of speech, assembly, and association and to refrain from punishing people in retaliation for the exercise of these rights.

95.     Defendants County of Alameda, Ahearn, and Staysa failed to adequately hold officers accountable for violations of people's rights, thereby condoning and encouraging those violations.

96.     Defendants County of Alameda, Ahearn, and Staysa systematically failed to adequately select, train, and supervise police officers under their control to refrain from engaging in excessive force against people exercising their First amendment rights.

97.     Defendants County of Alameda, Ahearn, and Staysa failed to adequately hold officers accountable for violations of people's rights, thereby condoning and encouraging these violations.

98.     The failures of defendants County of Alameda, Ahearn, and Staysa as set forth herein constitute unconstitutional customs and practices of ACSO.

### FOURTH CLAIM FOR RELIEF
#### Assault and Battery
(By all plaintiffs against defendant County of Alameda)

99.     Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

100.    By the above-described acts and/or omissions and/or failures to supervise

---

and/or failure to institute and execute adequate training and policies on the part of defendant County of Alameda, plaintiffs were assaulted and battered, thereby entitling plaintiffs to damages pursuant to California law.

101.    By virtue of the foregoing, defendant County of Alameda is liable under California Government Code § 815.2 for the acts of its employees, each of whom acted within the course and scope of his or her employment.

## FIFTH CLAIM FOR RELIEF
### Bane Act
(By all plaintiffs against defendant County of Alameda)
Cal. Civil Code § 52.1

102.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

103.    By their acts, omissions, customs, and policies, defendant County of Alameda, as described above, and with threats, intimidation, and/or coercion, violated plaintiffs' clearly established rights under California Civil Code § 52.1 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF
### Negligence
(By all plaintiffs against defendant County of Alameda)

104.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

105.    At all material times, defendant County of Alameda owed each plaintiff the duty to act with due and reasonable care in the execution and enforcement of any right, law, or legal obligation.

106.    These general duties of due and reasonable care owed to plaintiffs by defendant County of Alameda included, but were not limited to, avoiding the violation of plaintiffs' Constitutional rights, protecting plaintiffs from bodily restraint or personal insult as secured by California Civil Code § 43, conducting a reasonable investigation before effecting an arrest, and refraining from abusing authority.

107.    By the acts and/or omissions alleged above, defendant County of Alameda acted

negligently and breached their duty of due and reasonable care owed to plaintiffs, which foreseeably resulted in the suffering of harm by plaintiffs.

108.    By virtue of the foregoing, defendant County of Alameda is liable under California Government Code § 815.2 for the acts of its employees, each of whom acted within the course and scope of his or her employment.

## INJUNCTIVE AND DECLARATORY RELIEF

109.    Plaintiffs' only means of securing complete and adequate relief is to also seek declaratory and injunctive relief to provide plaintiffs substantial and complete protection from defendants' unlawful policies and practices. Remedies at law are inadequate. Plaintiffs therefore seek both legal damages and equitable remedies in the form of declaratory and injunctive relief against defendants

## DAMAGES

110.    As a result of the actions of defendants as set forth above, plaintiffs have been injured and have suffered damages as follows:

  a.    They have had their rights to peaceably assemble and redress their grievances irreparably harmed;

  b.    They have suffered physical and psychological harm;

  c.    They have incurred expenses for medical care;

  d.    They have lost income; and

  e.    They have incurred property loss.

WHEREFORE, plaintiffs request that this Court grant them relief as follows:

1.    A permanent injunction barring defendants from engaging in the unconstitutional conduct described herein and imposing appropriate remedial measures to prevent the repetition of such conduct in the future;

2.    Declaratory relief to determine that the acts and policies described herein violated the rights of the plaintiffs and class members;

3.    A determination that this action may proceed as a class action under Rule 23(b) of the Federal Rules of Civil Procedure;

4.      Designation of plaintiffs as class representatives and designation of plaintiffs'
counsel as class counsel;

5.      General damages, in an amount to be determined;

6.      Special damages, in an amount to be determined;

7.      Nominal damages;

8.      Reasonable attorneys' fees under 42 U.S.C. § 1988;

9.      Costs of suit; and

10.    Such other and further relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of
Civil Procedure.


Dated: April 27, 2022                SIEGEL, YEE, BRUNNER & MEHTA


By: ___*/s/ Dan Siegel*___
    Dan Siegel

Attorneys for Plaintiffs
ANTI POLICE-TERROR PROJECT,
COMMUNITY READY CORPS, SEAN CANADAY,
MICHAEL COHEN, ANDREA COSTANZO,
LINDSEY FILOWITZ, DANIELLE GAITO, KATIE
JOHNSON, JENNIFER LI, IAN McDONNELL,
LEILA MOTTLEY, MELISSA MIYARA, MARIA
RAMIREZ, AKIL RILEY, MANUEL RILEY, AARON
ROGACHEVSKY, CHRISTINA STEWART, TAYAH
STEWART, KATHARINE SUGRUE, CELESTE
WONG, and QIAOCHU ZHANG; on behalf of
themselves and similarly situated individuals